### THE CHARLES E. FALK.

(District Court, W. D. Washington, W. D.   December 10, 1907.)

1. MARITIME LIENS—AUTHORITY OF MASTER TO PLEDGE CREDIT OF VESSEL.
    A master's authority to pledge the credit of his ship is limited by the rule of necessity, and whoever extends to him credit beyond what is reasonably necessary in the prudent management of the vessel acquires no lien therefor.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 12.]

2. SAME—BORROWING MONEY FOR DISBURSEMENTS—UNAUTHORIZED LOAN.
    Libelants advanced money to a master in a port not the home port of the vessel on his representation that it was needed to disburse the ship. It was not, in fact, required for that purpose, and no part of it was used for the benefit of the vessel, but the master appropriated it to his own use. He was a part owner, but not the managing owner, of the vessel. Libelants made no inquiry as to the necessities of the vessel, and the amount lent was much larger than would ordinarily be required for the disbursements of such a vessel. Held, that they acquired no claim against the other part owners, nor their interests in the vessel, but were entitled to a lien upon the master's interest, and also a decree against him in personam.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 12.]

In Admiralty. Suit in rem, and in personam, against the schooner Charles E. Falk and her several owners to recover money advanced to disburse the ship on her arrival in port, which was not necessary, nor used for that purpose, but was appropriated by the master. He being a part owner, but not the managing owner, the court rendered a decree against him and his interest in the vessel, and dismissed the other respondents.

J. C. Cross, for libelants.
J. B. Bridges, for respondents.

HANFORD, District Judge. The libelants are engaged in business as bankers at the city of Aberdeen, in this state. At the request of Capt. Edward Anderson, then master of the schooner Charles E. Falk, they advanced to him $1,600, in three installments, $400 on the 2d day of February, 1907, $800 on the 4th, and $400 on the 8th day of the same month. Capt. Anderson, being a stranger to the libelants, was introduced to them at their bank by a man who then held the position of deputy collector of customs and deputy United States shipping commissioner. The captain represented to the libelants that the money was required to disburse the ship of which he was master. The evidence proves, however, that no part of the money was ex-

pended for the benefit of the ship or her owners, and the transaction was a swindle, deliberately planned by the captain. The schooner was a San Francisco vessel engaged in the coasting trade, and was at Aberdeen for a cargo of lumber to be furnished by the American Mill Company, which company under authorization from the managing owner paid the crew and all bills for necessaries furnished to the vessel on that trip. The bank advanced the money on the bare statement of the captain that it was required to disburse the ship, without making any inquiry whatever as to any necessity for the captain to have the money, or any necessity to pledge the credit of the ship in order to obtain it, and in the transaction the libelants acted upon a theory which they assumed to be in accordance with mercantile usage and law, that the captain of a vessel at places other than her home port is authorized to bind the vessel for any amount of money which he may ask for. Upon receiving the first installment of the loan, the captain gave to the libelants a sight draft on the managing owner for $400, and requested them to retain it to be exchanged for other drafts to include the entire amount of money advanced. This request was complied with, and, when the second installment was advanced, the first draft was given up to the captain in exchange for a similar draft for the amount of $1,200, and, when the final installment was paid, the $1,200 draft was exchanged for a $1,600 draft, which was on the day that the captain gave up the command of the vessel, and left Aberdeen. The $1,600 draft was sent for collection through a corresponding bank at Seattle to San Francisco, and was presented and acceptance refused on February 14th. The master's co-owners received no notice or information of the transaction until the draft was presented for acceptance and payment.

The first question to be decided is whether a suit in rem to recover the money can be maintained under the twelfth admiralty rule, which reads as follows:

"In all suits by material-men for supplies or repairs, or other necessaries, the libelant may proceed against the ship and freight in rem, or against the master. or owner alone in personam."

It is conceded that money required to protect a ship from claims enforceable by judicial process against her, or to fit her for service at sea, is to be regarded as other necessary supplies for which an admiralty lien attaches. The lien which is essential to the right to sue in rem is given for necessaries supplied on the order of the master. His authority to pledge the credit of the ship is limited by the rule of necessity, and whoever extends to him credit beyond what is reasonably necessary in the prudent management of the vessel is entitled to no greater consideration than others whose confidence may be abused by agents assuming authority which has not been delegated to them. The evidence establishes clearly that Capt. Anderson did not need money for use in the business of the vessel of which he was master. She did not come into port disabled or in distress. She came directly from San Francisco, where her managing owner resides. The money advanced was largely in excess of the amount ordinarily required to disburse a vessel of her size after such a voyage as she had made. There

was no representation made to the libelants of peculiar conditions creating a necessity for immediate use of the money, and, in fact, only one-fourth of the loan was requested and advanced immediately. Facilities for speedy communication with the managing owner were ample, and there had been no previous transactions between the parties from which the libelants might have presumed that the loan was requested in the usual and regular course of business. Considering all circumstances, it was imprudent for the libelants to advance the money without making inquiries to ascertain whether the conditions were such as to justify the captain in borrowing money on the credit of the ship—that is to say, whether money was needed for use in the business of the ship—and they voluntarily took the risk of making a loss. As no exceptions were taken on the ground of misjoinder of a suit in rem with a suit in personam, I am required to consider the case in its double aspect. It is sufficient to say, however, that as they did not contract the debt, nor in any manner assume an obligation to pay it, the owners other than Capt. Anderson are not liable, and there is no ground for the action against them.

Capt. Anderson is liable; and, although he appears with his co-owners, making a joint defense, he has no ground of defense, and the libelants are entitled to a decree against him personally, and for the condemnation of his share of the vessel for the full amount of the loan, with interest and costs. The vessel having been released from the marshal's custody and a bond accepted as security for the satisfaction of the judgment (if any) to be rendered pursuant to section 941, Rev. St. U. S. [U. S. Comp. St. 1901, p. 692], there can be no order to sell Anderson's interest in the vessel; but on the authority of the decision of the Circuit Court of Appeals for the Ninth Circuit in the case of The Willamette, 72 Fed. 79, 18 C. C. A. 373, I hold that the obligors in the bond may be required to satisfy the judgment, provided the value of Anderson's interest is sufficient. If, upon being cited to show cause why they should not pay the judgment in full, they require proof of the value of this interest, the case will be referred to a commissioner to take evidence, and make a finding as to the value.

I direct that a decree be entered dismissing the suit as against all of the respondents except Edward Anderson, and as against all interests in the vessel except his interest, and that a judgment be entered in favor of the libelants against Edward Anderson for $1,600, with interest at the rate of 6 per cent. per annum from the 2d day of February, 1907, and costs, and that the libelants be decreed to have acquired a valid lien upon the interest of said Edward Anderson as part owner of said schooner Charles E. Falk for the said sum of money, which was a valid and subsisting lien at the time of the attachment of said vessel by the marshal under the process of this court in this cause, and at the time of the release of said vessel by the marshal upon the acceptance of the bond executed by J. R. Hanify & Co., B. F. Johnson, and A. S. Coates, said decree to be enforced and executed as I have indicated.